## Case No. 10,435.

### In re O'DONOHOE.

### [3 N. B. R. 245 (Quarto, 59).] [1]

District Court, D. Maine.    March 4, 1869.

WITNESS—PRIVILEGE OF ATTORNEY.

When an attorney is not privileged from answering, being called as a witness.

At Bangor, March 4th, 1869, before Charles Hamlin, Esq., register in bankruptcy.

Edmund W. Flagg, of said Bangor, being first duly sworn, and examined at the time and place above mentioned, upon his oath, says, in answer to the questions proposed by H. M. Plaisted, Esq., assignee: Q. 1. Did you have charge or direction of the sale, at auction, of the John O'Donohoe stock of goods, in No. 2 Harlow's Block, Dec. 7th and 9th, 1868? Interrogatory objected to by deponent, who assigns the following reasons therefor: I am a lawyer and member of the Penobscot bar, and admitted to practice in all the courts of the state. I am a stranger to any of the facts inquired of in the interrogatory, and to all and any facts in the cause, except so far as they have been communicated to me by my clients as their professional adviser, and all that has been done by me has been done from information derived from them, and by their direction. I do not consider myself at liberty, and do not believe the law requires counsel to divulge in a court of justice what has been communicated to him by his clients, or what he did while acting in their behalf. My clients are Dennis J. Mullen, and Timothy Sullivan. Q. 2. Did you receive the proceeds of the sale of said stock? Interrogatory objected to by deponent as above, and for same reasons. Q. 3. What was the amount of the sale of said stock of goods?

---

[1] [Reprinted by permission.]

Interrogatory objected to by deponent as above, and for same reasons. Q. 4. Did you have in your possession or control the proceeds of said sale, at the time you were served with an injunction from the United States district court for the district of Maine, restraining you from paying over the same to your clients or other parties? Interrogatory objected to by deponent as above, and for same reasons. Q. 5. Have you in your possession or control the proceeds of the sale of said stock of goods? Interrogatory objected to by deponent as above, and for same reasons. Q. 6. Have you ever received, or had in your possession or control, the proceeds of said sale? Interrogatory objected to by deponent as above, and for same reasons. Q. 7. Were you, on or about the 12th of December, 1868, served with an injunction from the United States district court, for the district of Maine, issued on petition of creditors of John O'Donohue, a bankrupt, restraining you from paying over the proceeds of said sale of goods to your clients or other persons? Interrogatory objected to by deponent as above, and for same reasons. A. I was.

On motion of assignee referred to the court, as provided by the act of congress, approved March 2, 1867, § 7 [14 Stat. 520].

By CHARLES HAMLIN, Register:

Were the objections of Mr. Flagg, the witness, against the questions propounded by the assignee, valid, or should they be overruled, and the witness required to answer? This depends upon whether the subject-matter inquired into was a field of legitimate inquiry, and the extent of the privilege allowed by law, which forbids counsel from being compelled to disclose the secrets of his clients. There can be no doubt of the reason for the inquiries of the assignee who proposed the questions. He claims that he can show the witness did have charge of the auction sales, and expects to prove that the proceeds of the sale went into his hands. The inquiry being pertinent, how far is the witness protected from answering, because of his peculiar relations to Mullen & Sullivan, they being clients?

The bankrupt has disclosed on his examination facts tending to show, that when he executed mortgages to those persons and others, he was insolvent, the mortgages being executed September 7th, 1868; that November 7th and 9th, 1868, the stock of goods covered by the mortgages was sold at public auction, the bankrupt having previously executed to Mullen a bill of sale of all his interest as mortgagor, and that Mr. Flagg, the witness, made the writings or mortgages. The question was discussed before me, and some authorities adduced. The assignee relied mainly on section 24, 1 Greenl. Ev., on the ground that the deponent is a party to the transaction, i. e., the sale of the property and the disposition of the proceeds. The law which protects parties in such matters is clearly stated by Greenleaf in 1 Greenl. Ev. c. 13. He says: "The rule is clear and well settled, that the confidential counselor, solicitor, or attorney of the party, cannot be compelled to disclose papers delivered, or communications made to him, or letters or entries made by him in that capacity." If, touching matters that come within the ordinary scope of professional employment, they receive a communication in their professional capacity, either from a client, or on his account and for his benefit, in the transaction of his business, or, which amounts to the same thing, if they commit to paper in the course of their employment on his behalf, matters which they know only through their professional relation to the client, they are not only justified in withholding such matters, but bound to withhold them, and will not be compelled to disclose the information, or produce the papers, in any court of law or equity, either as a party or as a witness.

And the reason and foundation of the rule is out of regard to the interests of justice, which cannot be upholden, and to the administration of justice, which cannot go on without the aid of men skilled in jurisprudence, in the practice of the courts, and in those matters affecting rights and obligations which form the subject of all judicial proceedings. Says Chief Justice Shaw: "The law has considered it the wisest policy to encourage and sustain this confidence, by requiring, that on such facts the mouth of the attorney shall be forever sealed." See remarks of Metcalf, J., in Barnes v. Harris, 7 Cush. 576; and the same jurist observes, in Hatton v. Robinson, 14 Pick. 422: "But the privilege of exemption from testifying to facts actually known to the witness, is in contravention to the general rules of law; it is therefore to be watched with some strictness, and it is not to be extended beyond the limits of that principle of policy upon which it is allowed." Such is not only the well-settled rule of law, but the reason and philosophy on which it is founded. How does this cause stand when referred to the rule? Certainly the acts of counsel who took charge of an auction sale, and handled the money arising from such sales, cannot be called privileged communications. They are not matters which comes within the ordinary scope of professional employment. The interests of justice demand, and the administration of justice, especially in a bankrupt court, require, that the fullest examination of the acts of counsel be allowed in such a cause as this.

The privilege in question is confined to communications, and does not apply to the acts of parties. Kelly v. Jackson [13 Ir. Eq. 129], cited in Adams, Eq. (4th Am. Ed.) p. 113.

FOX, District Judge. It is a mistake to suppose that an attorney is privileged from

answering as to everything which comes to his knowledge while he is acting as attorney. The privilege only extends to information derived from his client as such. Information derived from other persons or sources, although derived or obtained while acting as attorney, is not privileged. 7 East, 357. The principle of the rule does not apply to the discovery of facts within the knowledge of an attorney, which were not communicated or confided to him by his client, although he became acquainted with the facts while engaged in his professional duty as the attorney of the client. In 1 Hill, 33, it was decided that if an attorney was present at any transaction in the way of business between his client and a third person, he is not privileged as to what then took place. In Whiting v. Barney, 30 N. Y. 330, the marginal note is: "The rule which protects professional communications of clients to their attorneys from disclosure, should only be held to extend to such communications as have relation to some suit, or other judicial proceeding either existing or anticipated." This is somewhat in conflict with other authorities, but it seems to me to be well sustained by the principles upon which the rule is supposed to rest. In this case Ingraham, J., says, in his opinion: "The decisions settle the rule, that when the disclosures are made in the presence of a third party, they are not privileged."

The answers to the questions propounded to Mr. Flagg in the present case could not possibly have disclosed any privileged communication; they only called upon him to state his own proceedings in the disposition of a stock of goods and the amount he received therefor. It was solely his own acts which he was required to disclose, and not anything whatever which his clients ever communicated to him; these acts were not professional; did not appertain to the duty of an attorney, but were such as any agent could have done, being the ordinary proceedings of an agent in selling the property of his principal, and paying over the proceeds which were the subject of investigation and inquiry. Whatever this witness had done in this behalf was not in his capacity of an attorney or counsel, but was in the character of an ordinary agent of a third party, transacted openly, with the knowledge of many other persons, and with nothing secret or confidential in any respect, so far as appears. In 15 La. Ann. 331, the same course of inquiry was made to a witness, and he was required to answer who was his client, when that relationship commenced and terminated, what money he had received and paid over, and to whom paid.

The law required of Mr. Flagg an answer to each of the questions propounded to him on this examination, and I have no doubt that he will at once make the requisite replies on learning the opinion of the court.